David D. DEASON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–610C.

United States Court of Federal Claims.

Nov. 22, 2002.

Joseph D. Gebhardt, Washington, DC, for plaintiff.

Kenneth S. Kessler, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant.

## ORDER

MILLER, Judge.

This civilian pay case is before the court on defendant's motion pursuant to RCFC 12(b)(1) to dismiss for lack of subject matter jurisdiction. Plaintiff filed suit seeking pay for overtime based on the Federal Employees Pay Act, 5 U.S.C. §§ 5542–5545 (2002), and various federal regulations, including an overtime policy of the Department of the Army. Defendant would hold plaintiff to the statutory six-year limitations period for the accrual of his claim. Plaintiff sets forth compelling facts that implicate the doctrine of equitable tolling. Argument is deemed unnecessary.

## FACTS

The following facts are drawn from plaintiff's complaint. David D. Deason ("plaintiff") was on active duty in the United States Army ("the Army") for 24 years. On October 16, 1989, plaintiff became a civilian employee of the Army. Beginning on April 23, 1990, plaintiff served as a Property Book Officer ("PBO") for the 282nd Base Support Battalion ("BSB") in Hohenfels, Germany.

As a PBO, plaintiff was authorized to handle all of the incoming and outgoing property for three battalions—the 282nd BSB, the CMTC, and the 1/4 Infantry. Plaintiff was also the only senior logistician and the senior resident for logistics for the post.

Plaintiff alleges that between approximately May 1990 and March 1996, his supervisors ordered him to work overtime, which totaled 2,951.50 hours, for which he has never been compensated. According to plaintiff, each monthly Actual Overtime Report from February 1991 to December 1992 documented his compensatory overtime and was signed

by his then-current supervisors, who were, in sequence, Major Saesae Tuia, Major William S. Pezdirtz, Captain Michael P. Reese, and Captain Kathy K. Reynolds. From January 1992 until March 1996, plaintiff was instructed by his supervisors, including Capt. Reynolds, Captain William Zeller, Capt. Walters, and Mr. Harold Brooks, to keep an informal log of his overtime hours that exceeded 30 hours per month. Although his time cards were not marked, plaintiff alleges that his supervisors reassured him that he had compensatory time available in case of illness or emergency.

On September 5, 1994, plaintiff submitted a memorandum to Capt. Zeller requesting compensatory time from September 5, 1994, to October 7, 1994, a total of 200 hours. In the memorandum plaintiff included his calculation of 2,839 hours accrued compensatory time prior to this request. Capt. Zeller approved and signed plaintiff's request.

In approximately May or June 1996, plaintiff's new supervisor, Captain Robert Young, informed plaintiff that he was not entitled to compensation for the overtime that he had worked, because plaintiff had not followed the correct procedures in keeping records of his entitlement to it.

Plaintiff wrote to United States Senators Christopher Bond and John Ashcroft on October 16, 1996, seeking assistance in resolving the conflict. Plaintiff sought either monetary payment or compensatory time off for the hours he had worked. In response to inquiry by Senators Bond and Ashcroft, Major Walter H. Pollard informed them that plaintiff needed to submit documentation that the overtime hours had been requested by his supervisors and approved by the 282nd BSB Commander.

On October 31, 1996, Charlotte L. Eady, Personnel Office, Department of the Army, prepared a memorandum for plaintiff addressing plaintiff's "Unofficial Compensatory Time." The letter, which was submitted through the Commander of the 100th Area Support Group ("ASG") and the Commander of the 282nd BSB, explained that overtime and compensatory time are subject to prior request and approval, pursuant to 7 Army Tactical Command ("ATC") overtime policy, ¶ 5c.[1] The memorandum detailed the request procedures, but acknowledged that the documentation certified that plaintiff worked the overtime he claimed.

On April 30, 1997, Maj. Pollard again responded to inquiry by Senators Bond and Ashcroft, stating that plaintiff should submit his request in writing through the 282nd BSB and the 100th ASG in order for his request to be forwarded to the appropriate civilian personnel officials for final determination.

Lieutenant Colonel Dane L. Rota, Commander of the 282nd BSB, issued a memorandum on July 31, 1997, to the Chief, Civilian Personnel Advisory Center at Grafenwoehr, Unit 28130, regarding plaintiff's claim. In the memorandum LTC Rota stated:

> Documentation and personal interviews with former supervisors of [plaintiff] support [plaintiff's] claim that his overtime was requested, approved and worked. No requirement existed for verification of approval by DOL, 100th ASG, and this approval was not sought nor granted. Although not properly recorded on official time cards, an unofficial agreement was apparently in effect between [plaintiff] and his supervisors. This agreement allowed this improper accumulation of overtime. Legal advisors have concurred with reimbursement of [plaintiff] based upon accumulated evidence, and this command supports such reimbursement of [plaintiff] in whatever manner is appropriate by law.

LTC Rota then requested that plaintiff's file be forwarded to the United States Office of Personnel Management ("OPM") for immediate consideration and expeditious processing given the lengthy delay in responding to plaintiff's request. Plaintiff's file was forwarded to OPM on September 3, 1997.

On September 17, 1997, Donald J. Neuland, Chief, Performance Management and Employee Relations Division at the Civilian Personnel Operations Center returned plaintiff's request for overtime pay for a local

---

1. *See* Compl. filed Oct. 25, 2001, ¶ 15.

decision by plaintiff's chain of command. Chief Neuland wrote:

> If a determination is made by an authorized official in the employee's organization that some or all of the overtime hours claimed by the employee were properly ordered and approved, then action can be initiated through the local Time and Attendance channels to credit the overtime hours on the relevant Time and Attendance cards.

Compl. filed Oct. 25, 2001, ¶ 20.

Approximately five weeks later, the BSB Commander offered plaintiff $10,000.00 to $15,000.00 plus 200–300 hours of compensatory time. Plaintiff alleges that this amount was less than 25% of what plaintiff was owed, which totaled approximately $71,000.00. Plaintiff rejected the offer and countered that at the least he should receive 50% of what he was owed.

On January 7, 1998, the BSB Commander offered plaintiff $15,000.00 with no compensatory time. Plaintiff again rejected the offer.

Plaintiff wrote OPM on February 12, 1998, to seek resolution of his claim. OPM contacted the 282nd BSB on March 16, 1998, requesting an administrative report and other information relevant to plaintiff's case. Paul Britner, Assistant General Counsel for OPM, wrote plaintiff on July 10, 1998, notifying him that OPM still had not received any notice from the BSB as of that date. Plaintiff pursued the matter with OPM on August 5, 1998, because he had not received any response. Plaintiff again contacted Mr. Britner almost a year later, on June 10, 1999, because no communication had been forthcoming since the July 1998 letter. Plaintiff received no response.

On July 28, 2000, LTC Earl M. Silver of the 282nd BSB, sent a memorandum to plaintiff regarding formal complaint procedures. LTC Silver claimed plaintiff had not filed a formal complaint with OPM, and therefore nothing could be done about his claim.

On January 11, 2001, OPM wrote plaintiff, denying his claim because no official documentation showed that plaintiff's overtime was ordered and approved or actively induced by authorized officials. The letter acknowledged that plaintiff produced evidence that he worked overtime, and the agency acknowledged that he worked overtime.

Plaintiff filed suit in the United States Court of Federal Claims on October 25, 2001, seeking judgment against defendant in an amount to be determined, plus interest.

## DISCUSSION

In a motion to dismiss for failure to state a claim, pursuant to RCFC 12(b)(1), the court must construe facts in a manner most favorable to the non-movant. *Pacetti v. United States,* 50 Fed.Cl. 239, 243 (2001). In this case the court will assume as true all allegations of fact presented by plaintiff.

Plaintiff claims that he is entitled to compensation for the overtime he worked as a civilian for the Army. He relies primarily on 5 U.S.C. § 5542 (2002), which provides:

> For full-time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or ... in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter, at the following rates ....

According to plaintiff, his superiors ordered and approved his overtime, and he in fact worked the overtime hours. On this basis he maintains that the Army is obligated to pay him for that time.

Defendant has moved for the court to dismiss plaintiff's claim for lack of jurisdiction because plaintiff's claim purportedly accrued more than six years before plaintiff filed his complaint. A claim can be brought against the Government in the United States Court of Federal Claims only if it is filed "within six years after such a claim first accrues." 28 U.S.C. § 2501 (2002).

The Federal Circuit has held that the six-year statute of limitations is an "express limitation on the Tucker Act's waiver of sovereign immunity." *Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990) (cited with approval in *Brown Park Estates–Fairfield Dev. Co. v. United States,* 127 F.3d 1449, 1454 (Fed.Cir.1997)); *see Caguas Cent. F.S.B. v. United States,* 215 F.3d 1304, 1310

(Fed.Cir.2000). "In that regard, we have stated that section 2501 'is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed.'" *Brown Park Estates–Fairfield*, 127 F.3d at 1454 (citing *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed.Cir.1988)); *see also Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (holding that statutes waiving sovereign immunity must be strictly construed). The Supreme Court has held that "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in the statutory text .... Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (cited with approval in *Brown Park Estates–Fairfield*, 127 F.3d at 1454). Therefore, the statute of limitations defense "may not be waived by either the Court of Federal Claims or the parties." *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *Hart*, 910 F.2d at 818–19).

Plaintiff argues that, during the period in which he accrued overtime pay, his extra time was never allocated to either overtime or compensatory time. The balance fluctuated as plaintiff used the compensatory time. Plaintiff therefore characterizes his claim as not fixed at any time before Capt. Young informed plaintiff in May or June 1996 that the Army would not honor the agreement plaintiff had with his previous supervisors.

■ "This court has long adhered to the view that a suit for compensation due and payable periodically is, by its very nature, a 'continuing claim' which involves multiple causes of action, each arising at the time the Government fails to make the payment alleged to be due." *Burich v. United States*, 177 Ct.Cl. 139, 143, 366 F.2d 984, 986 (1966) (cited with approval in *Hopland Band of Pomo Indians*, 855 F.2d at 1581). A claim against the United States accrues "when all the events have occurred which fix the liability of the Government and entitle the claim-

ant to institute an action." *Kinsey v. United States*, 852 F.2d 556, 557 (Fed.Cir.1988) (internal citations omitted).

■ In the case at bar, plaintiff's claim accrued when plaintiff was paid for his 40-hour workweek, without any form of premium pay. Although plaintiff's complaint does not specify exactly when he worked the overtime hours, his complaint indicates that at least some of his claim accrued outside the statute of limitations period.[2]

Plaintiff attempts to distinguish his case from *Burich*, noting that plaintiff in that case was not instructed to perform overtime. Indeed, in rejecting the overtime claim, the *Burich* court emphasized: "And thus the point of distinction is that plaintiff was not assigned overtime; he was assigned a task that *might* require overtime. Under such circumstances, his additional duty hours represented administratively uncontrollable overtime rather than regularly scheduled overtime." *Burich*, 177 Ct.Cl. at 145, 366 F.2d at 987. In contrast, plaintiff's supervisors in the present case actively instructed plaintiff to work overtime and to follow a different procedure for recording his overtime.

While plaintiff's complaint sets forth a prima facie case that his overtime was ordered or approved within the contemplation of 5 U.S.C. § 5542, *see Doe v. United States*, 54 Fed.Cl. 404, 409 (2002), the court is not convinced that plaintiff's distinction is meaningful in the context of determining the date(s) on which his claim accrued. The Federal Circuit has affirmed the principle that a pay claim accrues with each pay period in many different circumstances. *See, e.g., Beebe v. United States*, 226 Ct.Cl. 308, 323–24, 640 F.2d 1283, 1292–93 (1981) (holding that in suit for compensation of overtime pay, separate cause of action accrues each time overtime compensation excluded from plaintiff's pay) (cited with approval in *Cook v. United States*, 855 F.2d 848, 851 (Fed.Cir.1988) (affirming that a separate cause of action accrues each time overtime compensation was excluded from plaintiff's pay, but distinguishing claim because study conducted by Secre-

---

**2.** In his September 5, 1994 letter, plaintiff calculated his overtime hours at 2,839.

tary of Labor was condition precedent to suit)); *see also Brown Park Estates–Fairfield*, 127 F.3d at 1455 (holding that claim accrues when all events have occurred which fix liability of Government and entitle claimant to institute action); *Kinsey*, 852 F.2d at 557 (same); *Hopland Band of Pomo Indians*, 855 F.2d at 1577 (same).

The most comparable case is *Cook*. All the events for the claim had transpired; yet plaintiffs did not sue within the six-year time period, because the Government was slow to fulfill its obligation to issue a work study. The *Cook* plaintiffs were precluded from suing because the work study was a condition precedent to their claims. *See Cook*, 855 F.2d at 851. However, in the instant case plaintiff does not allege that any legal impediment precluded him from exercising his rights in court; he merely was not aware that the Army would not recognize his overtime, and on this basis he allowed six years to pass after most, if not all, of his claims accrued. Plaintiff therefore cannot seek relief on the same grounds as the *Cook* plaintiffs.

█ Although plaintiff's claim did not accrue in 1996, plaintiff's contention that his supervisors misled him to believe that he would be compensated for his overtime should weigh in plaintiff's favor. Plaintiff's informal arrangement cannot change the date on which the statute of limitations began to run, but it is germane to the equities of his case. Plaintiff has set forth a viable claim that the limitation period was equitably tolled for the period during which plaintiff was led to believe he would be compensated for his overtime.

The Federal Circuit has yet to apply the doctrine of equitable tolling to section 28 U.S.C. § 2501. However, the Supreme Court has not gone so far as to rule that equitable estoppel is never available in suits against the Government. *See Frazer v. United States*, 288 F.3d 1347, 1353 (Fed.Cir. 2002) (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 423–24, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)).

The Supreme Court has outlined what makes a claim appropriate or inappropriate for equitable relief:

Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

Assuming the facts alleged in a light most favorable to plaintiff at this juncture, plaintiff's supervisors affirmatively misled him to believe that they had an agreement for recording and receiving compensation for the overtime they instructed him to work. They induced plaintiff to rest on his rights by not seeking a judicial remedy before 2001. Plaintiff was unaware that he had been misled until Capt. Young informed him in May or June 1996 that the Army would not compensate him for the overtime. As soon as he was informed that his overtime would not be compensated, plaintiff began to seek relief from the Army, OPM, and even two Senators before ultimately resorting to the judicial system. Plaintiff was persistent in his appeals, which began only five months after Capt. Young notified him he would not be compensated. He persevered consistently over the years, despite significant delays on the part of the Army.

This is not an example of a complainant who rested on his rights. Plaintiff has set forth a claim for equitable tolling for the period during which he was misled. Computing the statute of limitations from the time plaintiff learned he would not be paid, in May or June 1996, his claim would have expired in May or June 2002. Plaintiff filed his claim in October 2001, well within this six-year period. His claim, if subject to equitable tolling, would fall within the statute of limitations.

Because provisions that waive the Government's sovereign immunity must be strictly

construed, the court allows discovery only on the issue of equitable tolling.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion for summary judgment is denied.

2. The parties may conduct discovery on the question of equitable tolling only, and shall submit a proposed discovery plan by December 6, 2002.